**TITAN GROUP, INC.,
Plaintiff-Appellant,**

**v.**

**Harold FAGGEN, Defendant-Appellee.**

**No. 239, Docket 74–1694.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 25, 1974.

Decided April 1, 1975.

Lawrence M. Powers, Steven E. Gross, Martin M. Green, Powers and Gross, New York City, for plaintiff-appellant.

Burton S. Cooper, Edward Labaton, Joel C. Feffer, Sheib, Shatzkin & Cooper, New York City, for defendant-appellee.

Before WATERMAN, OAKES and GURFEIN, Circuit Judges.

WATERMAN, Circuit Judge:

Titan Group, Inc. (Titan) commenced its action in the United States District Court for the Southern District of New York against Harold Faggen seeking the rescission of four contracts Titan had entered into with Faggen. Titan alleges that the defendant had violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970) and Rule 10b–5 promulgated under the 1934 Act, 17 C.F.R. § 240.10b–5 (1973), by making false and misleading statements and by failing to disclose material facts in connection with negotiations leading to Titan's acquisition of four actuarial companies owned by Faggen. Faggen counterclaimed for the principal and interest on promissory notes which he had received in payment for his companies. After a bench trial, Judge Tyler dismissed Titan's claim for contract rescission and

awarded Faggen $5,500,000 plus interest on his counterclaim. Titan appeals from the dismissal of its complaint and from the award to Faggen on Faggen's counterclaim.

We affirm the results reached below.

At the heart of this appeal lies the question of the appropriate legal significance to be accorded two memoranda Faggen prepared which were presented to Titan in the discussions prior to the drafting and execution of the contracts. Therefore it is necessary to recount in some detail the facts before the trial judge.

In 1968, Faggen began to consider selling his actuarial companies and he engaged in tentative discussions with several potential purchasers of them. Titan was a conglomerate with a concentration in real estate and construction. At this time Titan, under new management control, was seeking to diversify, and, additionally, it wanted to enhance its cash position. A New York lawyer, Benjamin Robinson, who had close professional ties with Faggen, was Chairman of Titan's Board of Directors.[1] Aware of perhaps complementary interests, Robinson introduced Faggen to Anthony Frank, the president-director of Titan. When serious negotiations began another attorney, Edmund Kaufman, an attorney with considerable experience in corporate acquisitions, was brought in as Titan's special counsel.

Kaufman and Faggen met for the first time on September 6, 1968. Faggen presented Kaufman a copy of the tax returns of his largest company for the last fiscal year and, also, a memorandum of adjustments to earnings. These adjustments added to the income reported on these tax returns the income of Faggen's three smaller companies, and noted certain possible economies relative to pension funding, liability for city and

---

1. Titan now claims that though all parties knew that close personal and professional ties existed between Faggen and Robinson, there was a hidden conflict of interest in that relationship, and that Faggen had a duty to disclose the extent of their business connections. ·

After the initial introductions, Robinson took no part in the subsequent negotiations leading to the execution of the contracts. Any claim of a conflict of interest damaging to Titan is a completely frivolous claim.

state taxes and payments for salaries, and also noted the existence of certain non-recurring expenses, and of individually earned accounting fees. The calculations of the memo, which also deducted some $45,000 for investment income, increased Faggen's income for that year from $288,494, the sum reported, to $571,476.

A second and final meeting between Faggen and Kaufman took place on October 2, 1968. Faggen brought to this meeting the tax returns for all his four companies for the past five years, and the companies' client ledgers and employment records. After examination of the tax records and discussion of possible adjustments, the meeting concluded with a tentative agreement on the acquisition, subject to approval by Titan's Board of Directors and a further working out of the details of the contract. The agreed-upon price of the Faggen companies was $5,500,000, to be paid in 10-year 4% convertible notes of Titan. The principal sum was ten times the estimated adjusted annual earnings of the Faggen companies.

Prior to a meeting of Titan's Board of Directors on October 9, 1968, Faggen, at the request of Kaufman, prepared another memorandum which was to be presented to the board. The memorandum briefly described the companies and placed some emphasis on the computer system under development there. Accompanying the memorandum were two exhibits: one showed pre-tax adjusted net income for the preceding four fiscal years,[2] and the other was an analysis of new clients. Copies of this memorandum were not distributed at the board meeting, but Titan's president, Frank, orally presented the earnings figures and the securities holdings of the Faggen companies.

The board approved the Faggen acquisition at this meeting but reserved a final approval pending an analysis of it by the executive committee. Subsequent to the board meeting Kaufman and an associate in Robinson's law firm prepared the contract. McIntyre, Titan's treasurer-director, and another Titan employee reviewed the financial basis of the transaction and found the Faggen adjustments to reported income to be reasonable. On December 2, 1968 the contracts were executed.

Difficulties arose after the merger. A disappointed employee of Faggen left immediately afterward, taking with him some clients. The data processing system encountered high startup and hardware expenses and never became profitable. Nonetheless, the actuarial side of the Faggen companies continued to show good profits. Titan between 1968 and 1972 withdrew $2.1 million in cash and securities from them. In 1972, Titan, under new management control, notified Faggen that Titan was no longer going to pay interest on his notes and commenced this action to rescind the contracts. Faggen treated the non-payment of interest as a default, and counterclaimed for the principal sum of the promissory notes and for accrued unpaid interest thereon.

The appellant's principal contention is that there were material misrepresentations and omissions by Faggen in the memorandum presented by him at the first meeting between Kaufman and him and in the memorandum prepared for presentation to the Titan Board of Directors. These alleged failings involve primarily the adjustments to earnings, the analysis of clientele, and the capacity of the computer program under development. The adjustments to income reflected anticipated earning increases that

---

**2.** Titan argues that Faggen's failure to comply with both generally accepted accounting principles and S.E.C. accounting rules in this exhibit was misleading as a matter of law. The statement of "Net Income—Pre-tax Adjusted to basis which will prevail after acquisition" simply states adjusted earnings figures for the fiscal years 1965–1968. There is no breakdown of these figures into various categories of income. The adjusted earnings of the various companies differ from those stated in the September 6, 1968 memorandum, although the earnings for 1968 are virtually identical. The income statement is clearly only a presentation of rough bottom line figures and not a financial report to which accounting principles and rules apply.

a publicly held company attempting to maximize income would realize after succeeding to the management of a privately held company which had minimized income for tax purposes. Titan complains that in three areas—pension funding, salaries, and travel and entertainment expenses—no reduction in expenses occurred, and that in his original memorandum Faggen had misrepresented potential savings. In the memorandum prepared for the board meeting, Faggen had stressed the computer program under development and had listed new clients of his companies. Titan claims that this memorandum had misrepresented the present capacity of the computer program and had failed to list lost clients.

■ After a bench trial, Judge Tyler rejected the claims of Titan, and found that Titan had not relied in any way on Faggen's representations. The inducement for the contract, the judge found, lay elsewhere: that Chairman Robinson was strongly in favor of the acquisition, that the Faggen companies had a good liquid asset position, that the Faggen companies were profitable, and that the possibility of melding together actuarial and real estate companies was attractive. He found that these broad considerations, rather than interstitial details of client lists or of immediate data processing capacity, sparked Titan's acquisitive interest. As to the adjusted earnings statements, the trial judge found that Titan was aware of the basis of the adjustments; and was aware, or should have been aware, from the tax returns that the bottom line figures included, rather than excluded, investment income. He found that Titan was interested during the preliminary discussions with Faggen, and subsequently, in the financial analysis of his companies in but rough "ballpark" figures and that the only purpose the memoranda was to serve was that of providing an approximation of what the Faggen companies would earn through the elimination of certain expenses if the companies were publicly, rather than privately, owned.

Tending to buttress the absence of any determinative reliance upon Faggen's representations the judge pointed out such factors as the relative position of the parties, their arms-length negotiation, and Titan's long opportunity to examine the financial status of the Faggen companies prior to closing the deal. Furthermore, Titan advances no claim that there are material misrepresentations or omissions in the sections of the contracts detailing the seller's representations and warranties.

Although Titan vigorously contests the bases for these findings of fact, we conclude that Judge Tyler's findings are amply supported by the record, and are not clearly erroneous findings.

On this appeal, Titan argues that reliance is no longer a requisite element in Rule 10b–5 actions involving omissions alleged to be material when it is shown that facts alleged to be material were not disclosed. This result derives, it is contended, from the Supreme Court's decision in Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). That case involved Rule 10b–5 claims predicated on the nondisclosure of material facts to Indian sellers of corporate stock by the transfer agent bank employees who were themselves profiting through the sales of the stock to non-Indians. The Court, imposing liability on the bank and its employees, stated

[u]nder the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. Id. at 153–154, 92 S.Ct. at 1472.

■ By this language the Court, rather than abolishing reliance as a prerequisite to recovery, was recognizing the frequent difficulty in *proving*, as a practical matter, that the alleged misrepresentation, allegedly relied upon, caused the injury. The parallel elements of materiality and reliance both serve to re-

strict the potentially limitless thrust of Rule 10b–5 to those situations in which there exists a causation in fact between the act and injury. Globus v. Law Research Service, Inc., 418 F.2d 1276 (2 Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970), List v. Fashion Park, Inc., 340 F.2d 457 (2 Cir.) cert. denied, sub nom. List v. Lerner, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Causation remains a necessary element in a private action for damages under Rule 10b–5. Shapiro v. Merrill, Lynch, Pierce, Fenner and Smith, Inc., 495 F.2d 228 (2 Cir. 1974). Unlike instances of affirmative misrepresentation where it can be demonstrated that the injured party relied upon affirmative statements, in instances of total non-disclosure, as in *Affiliated Ute*, it is of course impossible to demonstrate reliance, and resort must perforce be had to materiality, i. e., whether a reasonable man would attach importance to the alleged omissions in determining his course of action.

■ In cases involving non-disclosure of material facts, even when coupled with access to the information, materiality rather than reliance thus becomes the decisive element of causation. See, e. g., Metro-Goldwyn-Mayer, Inc. v. Ross, 509 F.2d 930 (2d Cir. 1975), Stier v. Smith, 473 F.2d 1205 (5th Cir. 1973). And determination of materiality allows logically an inference of reliance. Chris-Craft Industries Inc. v. Piper Aircraft Corp., 480 F.2d 341 (2 Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). See, generally, Note, 88 Harvard L.Rev. 584 (1975).

This case is not an appropriate one in which to find materiality in the light of all the circumstances. This is a case both of alleged misrepresentations and of alleged material omissions. We view Judge Tyler's findings as determining that there was an abundance of evidence of the matters the plaintiff really considered important in entering this face to face transaction, that while the omissions might, in other circumstances, have been deemed material, the omissions

were not material in these circumstances. These findings were not clearly erroneous, and correctly applied the applicable law.

Titan raises a number of objections to the trial court's award to Faggen on his counterclaim of the full face amount of the notes, $5,500,000, plus interest to the date of the judgment.

In exchange for his four actuarial businesses, Faggen received 4% Convertible Installment Notes to be paid in five yearly installments between 1974 and 1978. The 4% interest was to be paid semiannually. Conversion rights, potentially valuable, gave Faggen the option to exchange the bulk of his notes into common stock of Titan at the basic rate of one whole share of stock for each $20.00 of unpaid principal. The remainder was convertible at $15.00. Upon fifteen days' written notice and at the option of Faggen, a default in the payment of any installment of interest or principal accelerated the maturity of the outstanding notes.

■ Titan, simultaneously with the commencement of this action, defaulted on the payment of interest, and now claims that the acceleration clauses in the Faggen notes violate Section 29 of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc. We do not agree with Titan. Titan need not have defaulted before seeking rescission and the acceleration clause in the Faggen notes does not prevent the federal court from adjudicating upon all the issues involved in this case.

■ Titan further objects to the award of the entire face amount of the notes. It claims this to be an excessive penalty which includes hidden unearned interest rates. The main prop of this argument is the statement of Faggen's expert witness, Shinagel, that at the time of acquisition the notes had a then cash value of $3,200,000. Faggen however did not receive $3,200,000 in 1968; he received promissory notes of the face

amount of $5,500,000 with potentially valuable conversion rights. In return for its promised liability on these notes Titan received four profitable businesses, a corporate stock portfolio with liquid assets in excess of $1,000,000, and a five-year period before it was required to make any payments on the principal indebtedness.

As to Titan's claim on this issue, we are unable to disagree with the position taken by the trial judge who found that here, on these facts, there was no concealed interest rate, and that the acceleration of the notes did not constitute a penalty against Titan.

■ Finally appellant argues that Judge Tyler when allowing Faggen's counterclaim against it, improperly refused to allow its claims of set-off against Faggen because clients were diverted from Titan. The record simply does not support this allegation.

Affirmed.