**Hortense FRIEDLANDER et al., Plaintiffs,**

v.

**The CITY OF NEW YORK et al., Defendants.**

No. 75 Civ. 3981.

United States District Court, S. D. New York.

June 21, 1976.

Abrams & Sassower, New York City (by Burton M. Abrams, New York City, of counsel), Pomerantz, Levy, Haudek & Block, New York City (by Abraham L. Pomerantz and A. Arnold Gershon, New York City, of counsel), for plaintiffs.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant The Chase Manhattan Bank.

W. Bernard Richland, Corp. Counsel and James G. Greilsheimer, Litigating Asst. Corp. Counsel, New York City, for defendant The City of New York, Abraham Beame and Harrison J. Goldin.

Davis, Polk & Wardwell, New York City, for defendant Morgan Guaranty Trust Co, of New York.

Baer & McGoldrick, New York City, for defendant Ehrlich-Bober & Co., Inc.

Seward & Kissel, New York City, for defendant First Pennco Securities.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Bear, Stearns & Co..

White & Case, New York City, for defendant Bankers Trust Co.

Simpson, Thacher & Barlett, New York City, for defendant Manufacturers Hanover Trust Co.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.

Shearman & Sterling, New York City, for defendant First National City Bank.

Cravath, Swaine & Moore, New York City, for defendant Chemical Bank.

Donovan, Leisure, Newton & Irvine, New York City, for defendant A. G. Becker & Co., Inc.

Robert Beshar, New York City, for defendant Weeden & Co., Inc.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant Salomon Brothers.

Cahill, Gordon & Reindel, New York City, for defendant E. F. Hutton and Co., Inc.

## MEMORANDUM AND ORDER

OWEN, District Judge.

This is one of several actions instituted against the City of New York and others [1] by New York City obligation holders alleging losses stemming from the City's fiscal

---

1. The defendants fail into three categories: (1) the City and certain officials, (2) certain commercial banks, and (3) certain brokerage houses.

plight.[2] Plaintiffs, holders of certain New York City notes, move for class certification. They seek leave, pursuant to Rule 23(b)(3) of the Fed.R.Civ.P. to proceed on behalf of all persons who purchased any of the four series of New York City short-term notes issued from December 13, 1974 through March 14, 1975.[3] This proposed class would not include so-called "after-market" purchasers, but would be limited to the first non-dealer purchasers of an original issue note.

The complaint states that on June 1, 1974 New York City had outstanding $4.4 billion short term notes, of which the defendant banks held approximately $3.5 billion and large clients of the defendant brokers approximately $900 million. Plaintiffs claim that said defendants, being possessed of "inside" information that the City would be unable to pay off these notes when they came due, devised a plan to sell further issues of the City's notes to the general public with the intent that the proceeds of these sales would be used to "bail-out" their current holdings. Plaintiffs allege that pursuant to this scheme, said defendants, while concealing from the public information about the City's impending default, reduced their holdings of short-term notes and that of their principal clients from approximately $4.4 billion in June 1974 to approximately $1.9 billion in June 1975. In short, plaintiffs alleged that said defendants, while ostensibly acting as disinterested intermediaries in the sale of the City's notes, were in fact selling for their own account. The City of New York and its Mayor and Comptroller are alleged to be aiders and abettors in the foregoing by, among other things, concealing the City's critical financial condition and falsifying certain records to create the appearance of a better financial picture.

■ These allegations state a claim under the federal securities laws. A decision by an underwriter or dealer of commercial paper to dispose of its own holdings of the issue it is selling (or its equivalent) without disclosing that fact is a violation of Rule 10b–5, because "it [is] understood that it [is] holding out the paper as credit-worthy and high quality." *Franklin Savings Bank v. Levy*, 406 F.Supp. 40, 46–47 (S.D.N.Y.1975). Such information would be material since "a reasonable man would attach importance [to it] in determining his choice of action in the transaction . . . ." *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1171 (2d Cir. 1970) quoting *List v. Fashion Park, Inc.*, 340 F.2d 457, 462 (2d Cir.), *cert. denied*,

---

**2.** There are a total of five actions before me alleging, *inter alia*, violations of Rule 10b–5 in connection with the sale of New York City notes and bonds. (*Friedlander v. City of New York*, 75 Civ. 3981; *Spector v. City of New York*, 75 Civ. 5461; *Goldfarb v. City of New York*, 75 Civ. 5581; *Weisberg v. City of New York*, 75 Civ. 5582; *Velardi v. First National City Bank*, 76 Civ. 843). All seek class action certification. While these cases have not been consolidated, they are all before me as related cases and pre-trial practice has been coordinated.

There is also overlapping of membership in some of the proposed classes. However, the different complaints are sufficiently distinct to permit, if not require, separate treatment, at least for the purposes of class action certification.

**3.** The notes in question are as follows:

| Amount | Type of Note | Maturity Date | Issued |
|---|---|---|---|
| 1) . . . . $400,000,000 | Revenue Anticipation | Dec. 11, 1975 | Dec. 13, 1974 |
| 2) . . . . 620,000,000 | Revenue Anticipation | Jan. 12, 1976 | Jan. 13, 1975 |
| 3) . . . . 290,000,000 | Revenue Anticipation | Feb. 13, 1976 | Feb. 14, 1975 |
| 4) . . . . 491,270,000 | Bond Anticipation | Mar. 12, 1976 | Mar. 14, 1975 |

While the complaint speaks of a period commencing on September 30, 1974 and ending on August 13, 1975, the reply memorandum limits the class to purchasers of the above notes. This memorandum is predicated on this more narrowly drawn class. The named plaintiffs are members of the proposed class.

382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). *See also Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

Although defendants assert that the "bail-out" claim is too conclusory to be an adequate basis for a class action, I conclude (without making—or having to make—any judgment on its merits) that the complaint is sufficiently specific for the purposes of this motion.[4]

▆▆▆ The main thrust of defendants' argument in opposition is that class action certification should be denied because common questions do not predominate as required by Rule 23(b)(3).[5] Their argument, to succeed, requires that this action be one of misrepresentation rather than nondisclosure. If it is one of nondisclosure, the varying amounts and kinds of knowledge that may have been possessed by different class members, whether misrepresentations by broker/dealers or information gleaned from the press, does not preclude class treatment where what is alleged is a complete failure to disclose critical facts. *Esplin v. Hirschi,* 402 F.2d 94, 100 (10th Cir. 1968) *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Seiffer v. Topsy's Int'l Inc.,* 64 F.R.D. 714, 719 (D.Kan. 1974). If, on the other hand, the focus is upon alleged misrepresentations, then, in the absence of a common document such as a prospectus, the question of whether each class member received the alleged misrepresentation is apt to necessitate an individual inquiry which defeats class treatment.

*Mascolo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* [Current] CCH Sec.L.Rpt. ¶ 95,-470 (S.D.N.Y.1976).

Defendants' argument is however easily answered, for the amended complaint is clearly based on a failure to disclose material facts and not upon misrepresentations. The underlying claim is that the various defendants sought to get rid of the City notes they held before the City defaulted, and in order to achieve that end they concealed their plan. Plaintiffs' claim is not that certain facts about the "bail-out" were concealed while others were disclosed or distorted, but that there was a *total* suppression of all the facts relating to the alleged "bail-out." Thus, the individual question of how much information each investor had about New York City's financial state is not directly relevant. *See Franklin Savings Bank v. Levy, supra,* 406 F.Supp. at 46.

▆▆▆ I further note that in determining whether common questions predominate here, it is insufficient to look only at the issues of nondisclosure and misrepresentation. There is in this action a fundamental question, whose existence the defendants would be the first to concede, of the very existence of the alleged "bail-out" conspiracy. This issue, admittedly common to all proposed class members, is at this stage in the litigation the predominating question. Questions relating to disclosure, individual or otherwise, need not be reached unless plaintiffs can establish the existence of the alleged conspiracy.[6] Accordingly, the pre-

---

4. *Compare Robinson v. Penn Central Co.,* 58 F.R.D. 436, 442 (S.D.N.Y.1973) ("wholly conclusory allegations of 'conspiracy' . . . and the mere tracking of the statutory language of 10b-5 . . . .").

5. First, defendants contend that the oral representations made by the various brokers and dealers who sold the notes to the public necessarily differ among class members and thus preclude class treatment. Secondly, they argue that because of the massive public disclosures in the press concerning New York City's bleak financial outlook, various investors had vastly different amounts of information and thus should not be lumped together in one class.

6. The importance in this context of whether there is dispute over the truth of the facts allegedly concealed is illustrated in *Mascolo v. Merrill Lynch, supra.* The court declined to grant class action status with respect to most of plaintiffs' claims on the ground that individual questions predominated. But with respect to the allegation that the defendant brokerage firm and its brokers failed to disclose the pecuniary benefits they allegedly received from stock sales, the class was certified even though there were individual issues of disclosure. [Current] CCH Sec.L.Rpt. ¶ 95,470 at 99,389–399.

dominating common question requirement of Rule 23(b)(3) is met here.

■ Defendants further argue that given the plethora of dismal financial information reviewed in the press and elsewhere, they have the right to prove "that disclosure of still more negative information would not have influenced any investor's decision to purchase City securities." The defendants may not have this right in a nondisclosure case.[7] In any event, the right to individually disprove causation would not render the class action unmanageable. *Blackie v. Barrack*, 524 F.2d 891, 907 n. 22 (9th Cir. 1975).

■ Defendants next urge that the cumulative size and scope of the various City note and bond cases before me would render class treatment wholly impractical. However, these actions need not be so considered. There is no reason not to deal with each pending action separately. Plaintiffs' estimate of the class size in this, the *Friedlander* action, is 30,000 which, while large, is not unmanageable.

Finally, defendants claim that because some class members have exchanged their notes for bonds issued by the Municipal Assistance Corporation, while others still retain their notes—presently subject to a three year moratorium—a conflict exists as between class members. At least at this stage, no such conflict appears to exist. Should such a conflict develop, subclasses can be created. See *Blackie v. Barrack*, 524 F.2d at 908–11.

It is undisputed that other requirements of Rule 23—that the class is too numerous for joinder and that the representative parties will fairly and adequately protect the interests of the class—are met here.

Accordingly, plaintiffs' motion to declare a class consisting of all persons who purchased the notes listed in footnote 3, *supra*, limited, however, to the first non-dealer purchasers of an original issue, is granted.

So Ordered.

7. *See Shapiro v. Merrill Lynch, Pierce, Fenner & Smith*, 495 F.2d 228 (2d Cir. 1974); *Franklin Savings Bank,* supra; *Zipkin v. Genesco* [Current] CCH Sec.L.Rpt. ¶ 95,409 (S.D.N.Y.1975).

*See also, Williams v. Sinclair,* 529 F.2d 1383 (9th Cir. 1976); *Ramsey v. Arata,* 406 F.Supp. 435 (N.D.Tex.1975).