**In re NEW YORK CITY MUNICIPAL SECURITIES LITIGATION.**

**Hortense FRIEDLANDER, Barbara J. Zwynenburg, Louis Liebowitz and Mark Horowitz, Plaintiffs,**

**v.**

**The CITY OF NEW YORK et al., Defendants.**

**Michael H. SPECTOR and James H. Truncell, Plaintiffs,**

**v.**

**The CITY OF NEW YORK et al., Defendants.**

**MDL No. 314, M–21–22.**

United States District Court, S. D. New York.

June 5, 1980.

See also D.C., 71 F.R.D. 546, D.C., 71 F.R.D. 550.

Pomerantz, Levy, Haudek & Block by Eugene H. Zagat, Jr., Abrams & Sheidlower by Burton M. Abrams, Gold, Farrell & Marks by Thomas R. Farrell, Fellner, Rovins & Gallay, P.C., Milberg, Weiss, Bershad & Specthrie by David J. Bershad, William I. Weisberg, Teitler & Teitler by Michael Teitler, New York City, for plaintiffs.

Milbank, Tweed, Hadley & McCloy by Briscoe R. Smith, New York City, for The Chase Manhattan Bank.

Shearman & Sterling by Clarence W. Olmstead, Jr., New York City, for Citibank, N.A.

Davis, Polk & Wardwell by Lowell Gordon Harriss, New York City, for Morgan Guaranty Trust Co. of New York.

Cravath, Swaine & Moore by Gregory A. Markel, New York City, for Chemical Bank.

White & Case by Laura B. Hoguet, New York City, for Bankers Trust Co.

Simpson, Thacher & Bartlett by Roy L. Reardon, New York City, for Manufacturers Hanover Trust Co.

Cleary, Gottlieb, Steen & Hamilton by Evan A. Davis, New York City, for Salomon Bros.

Schulte & McGoldrick by Irwin J. Sugarman, New York City, for Ehrlich-Bober & Co., Inc.

Donovan, Leisure, Newton & Irvine by Ronald L. Cohen, New York City, for A. G. Becker & Co.

Robert P. Beshar, New York City, for Weeden & Co.

Brown, Wood, Ivey, Mitchell & Petty by Richard Conway Casey, New York City, for Merrill Lynch, Pierce, Fenner & Smith, Inc.

Nitkin, Alkalay, Handler & Robbins, New York City, for First Pennco Securities, Inc.

Ropes & Gray by George Marshall Moriarty, Boston, Mass., for The First Nat. Bank of Boston.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Before me are the remaining motions presented to the Court on April 3, 1980: (A) the motion of certain defendants for an amendment to the opinion and order of the Court dated January 25, 1980, certifying certain questions to the Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1292(b); (B) the motion of certain defendants for leave either to amend their answers to assert crossclaims, pursuant to Fed.R.Civ.P. 13, or to file third-party complaints, pursuant to Fed.R.Civ.P. 14, against the City of New York; (C) the motion of certain defendants for an order, pursuant to Fed.R.Civ.P. 26(c)(1), decertifying the bond class certified by the Court in *Spector v. City of New York*, 71 F.R.D. 550 (S.D.N.Y. 1976) and the note class certified by the Court in *Friedlander v. City of New York*, 71 F.R.D. 546 (S.D.N.Y.1976); (D) the motion of the class plaintiffs in *Spector v. City of New York* and *Truncell v. Bank of America N. T. & S. A.* for an order narrowing the bond class to nondealers who purchased New York City General Obligation Bonds upon their original issue after May 1, 1974 and prior to September 30, 1975; and

(E) the motion of the class plaintiffs for an order, pursuant to Fed.R.Civ.P. 15, permitting plaintiffs to amend their complaints in *In re New York City Municipal Securities Litigation* to drop as defendants Weeden & Co., Inc., A. G. Becker & Co., Inc., Ehrlich-Bober & Co., Inc., Bear Stearns & Co., Inc. and First Pennco Securities, Inc.[1]

### A. Defendants' Motion for Certification of the Court's January 25, 1980 Decision.

Defendants seek certification, pursuant to 28 U.S.C. § 1292(b) of this Court's opinion and order, dated January 25, 1980, which (1) denied the motion of certain defendants for judgment on the pleadings on the ground that underwriters and sellers of municipal securities were subject to implied liability under § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), for fraudulent conduct in connection with the sale of municipal securities; (2) dismissed the City of New York (the "City") and its former Mayor and its Comptroller from this lawsuit on the ground that, prior to the 1975 amendments to the Securities Exchange Act of 1934 (the "1934 Act"), the City was not a "person" within the meaning of § 3(a)(9) of the 1934 Act, 15 U.S.C. § 78c(a)(9). The Court also held that the plaintiffs' common law claims against the City did not fall within the Court's pendent jurisdiction.

For the reasons set forth below, I conclude that certification of this Court's order of January 25, 1980 would be inappropriate. An interlocutory appeal is permitted, pursuant to 28 U.S.C. § 1292(b), only where the district court concludes that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. *See Milbert v. Bison*, 260 F.2d 431 (3rd Cir. 1958).

The Interlocutory Appeals Act of 1958 was designed, *inter alia*, to permit appellate review in "cases where a long trial would be necessary for the determination of liability or damages upon a [district court] decision overruling a defense going to the right to maintain the action." H.Rep. No. 1667, 85th Cong. 2d Sess. 1 (1958). *See generally*, S.Rep. No. 2434, 85th Cong. 2d Sess. 2–3, *reprinted in* 1958 U.S.Code Cong. & Admin. News, pp. 5255, 5256. The enactment of 28 U.S.C. § 1292(b) did not, however, exempt "big cases" from the final judgment rule of 28 U.S.C. § 1291 so as to permit interlocutory appeals as of right in such cases.

Defendants' arguments in support of their certification motion are essentially the same as those advanced in connection with the motion to dismiss. The defendants first contend that recent Supreme Court decisions in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) foreshadow the disappearance of a private cause of action under § 10(b) of the Securities Exchange Act. This Court found that argument unpersuasive when it was first advanced four months ago, and rejects it again today.[2] The decisions of the Supreme Court in *Cannon* and *Touche Ross* explicitly recognized "the 25 year old acceptance by the lower federal courts of 10b–5 causes of action." *Cannon v. University of Chicago, supra*, 99 S.Ct. at 1977 (citations omitted). In so do-

---

1. The moving defendants are the Chase Manhattan Bank, N.A., Citibank, N.A., Morgan Guaranty Trust Company, Chemical Bank, Bankers Trust Co., Manufacturers Hanover Trust Co., and Salomon Brothers (hereinafter the "defendants" or the "underwriter defendants.").

2. The decision of the Court of Appeals for the Second Circuit in *Ross v. A. H. Robins Co., Inc.*, 607 F.2d 545 (2d Cir. 1979) and *CETA Workers' Organizing Committee v. The City of New York*, 617 F.2d 926 (2d Cir. 1980) fully support the court's conclusion as to the impact of the *Cannon-Touche Ross-Transamerica* trilogy on an implied cause of action under § 10(b). The defendants hope to distinguish *Ross* on the ground that it "did not deal with an exempted security." Memorandum of Law In Support of Motion to Amend Order at 5. This is just one more attempt to turn a blind eye to the fact that *Superintendent of Insurance*, cited in *Ross, supra*, at 552, involved an exempted security.

ing, the Court expressly reaffirmed the holding of *Superintendent of Insurance v. Bankers Life & Casualty*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), where the Court first recognized the existence of an implied cause of action under § 10b. Nonetheless, the defendants persist in their attempt to diminish the impact of *Superintendent of Insurance* and its progeny. They rely on the fact that the securities involved in the instant litigation are "exempt securities," i. e., securities exempt from the express liability provisions of the Securities Exchange Act. However, the underlying security in *Superintendent of Insurance* was also an exempt security. This fact was recognized by almost every court to consider the question of whether an implied cause of action exists under § 10(b) for fraud in connection with transactions in exempt securities. *See, e. g., Kirshner v. United States*, 603 F.2d 234 (2d Cir. 1978), *rehearing denied*, No. 77–6104 (2d Cir. July 19, 1979), *cert. denied sub nom. Goldberg v. Kirshner*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979) (New York City bonds); *Shapiro v. Schwamm*, 279 F.Supp. 798 (S.D.N.Y.1968) (Municipal bonds); *Texas Continental Life Ins. Co. v. Bankers Bond Co., Inc.*, 187 F.Supp. 14 (W.D.Ky.1960), *rev'd on other grounds sub nom. Texas Continental Life Ins. Co. v. Dunne*, 307 F.2d 242 (6th Cir. 1962), *settlement agreement enforced sub nom. All States Investors Inc. v. Bankers Bond Co., Inc.*, 343 F.2d 618 (6th Cir.), *cert. denied*, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965) (Municipal bonds); *Thiele v. Shields*, 131 F.Supp. 416 (S.D.N.Y.1955) (Municipal bonds of Nebraska Bridge Commission); *Baron v. Shields*, 131 F.Supp. 370 (S.D.N.Y. 1954) (Municipal bonds of Nebraska Bridge Commission); *Connecticut Mutual Life Ins. Co. v. Shields*, 131 F.Supp. 363 (S.D.N.Y. 1954) (Municipal bonds of Nebraska Bridge Commission). As these decisions demonstrate, not only is there no substantial ground for difference of opinion, there is no ground at all.

The decision in *Superintendent of Insurance* may reflect "the unique history of § 10b–5, *Cannon v. University of Chicago, supra*, at 1979, but the Supreme Court has not chosen to alter it.[3]

Accordingly, the motion by the defendants to amend the order, dated January 25, 1980, is denied.

**B.** *Motion of Certain Defendants to Amend Their Answers to Assert Counterclaims or Crossclaims.*

Defendants move to amend their answers to assert either crossclaims or counterclaims against the City for indemnity and contribution with respect to defendants' potential liability for alleged violations of the federal securities laws and state law. In filing this motion, the defendants seek the benefits of a "stand-still" agreement executed in February 1976 between the City of New York and the underwriter defendants which preserved the underwriters' right to assert crossclaims and/or counterclaims against the City.

The defendants forthrightly admit that the assertion of crossclaims or counterclaims is nothing other than an attempt "to frame an optimal package for appellate consideration." Memorandum of Law in Support of Leave to File Crossclaims or Third Party Complaints at 6. Basically, the defendants request three orders: (1) granting them leave to file crossclaims or third party claims for indemnity and/or contribution; (2) an order dismissing these claims, pursuant to the court's decision in *Levy v. First National City Bank*, (S.D.N.Y.1980); and (3) an order entering final judgment, pursuant to Fed.R.Civ.P. 54(b), permitting an appeal as of right. *But see* note 6, *infra*. In this fashion, defendants seek expedited review by the Court of Appeals for the Second Circuit of the availability of indemnity and/or contribution from the City for liability incurred in the distribution of such securities, as well as the applica-

---

**3.** The plaintiffs have not requested certification pursuant to 28 U.S.C. § 1292(b). In fact, they strenuously object to certification on the

ground that it would unduly prolong the lawsuit.

bility of § 10(b) of the Securities Exchange Act to transactions in municipal securities.

For the reasons set forth in *Levy v. First National City Bank*, (S.D.N.Y.1980), I decline to permit these crossclaims or third-party claims against the City. *See generally*, 3 Moore's Federal Practice ¶ 14.-03[3][7] (2d ed. 1979 & Supp.1980). The Court of Appeals for the Second Circuit has held that indemnity agreements between issuers and underwriters are unenforceable, reasoning that "underwriters who knew they could be indemnified simply by showing that the issuer was 'more liable' than they . . . would have a tendency to be lax in their independent investigations." *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). *See also* 3 L. Loss Securities Regulation 1831 (1961). Thus, for what are essentially policy reasons related to the enforcement of the federal securities laws, indemnification is not available to the underwriter defendants for liability incurred in connection with the distribution of City securities. There is no reason, therefore, to permit the defendants to assert claims for indemnity under federal or state law which are legally insufficient.[4]

Defendants also seek to assert crossclaims or third-party claims for contribution against the City, as a joint tortfeasor, in connection with the defendants' alleged violations of the federal securities laws and state common law. Federal courts have permitted contribution in connection with federal securities law violations because it accomplishes an equitable apportionment of liability among joint tortfeasors.[5] *See, e. g., Globus, Inc. v. Law Research Service, Inc.*, 318 F.Supp. 955 (S.D.N.Y.1970), *aff'd on opinion below*, 442 F.2d 1346 (2d Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112 (S.D.N.Y.1974), *aff'd in part and rev'd in part*, 540 F.2d 27 (2d Cir. 1976); *Stratton Group Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1185 n. 4 (S.D.N.Y.1979). *See also* L. Loss *Securities Regulation* 1738–1740. But the City, being immune from suit for the reasons stated in *In re New York City Municipal Securities Litigation*, (S.D.N.Y.1980) cannot be liable for contribution in connection with the defendants' alleged violations of § 10(b) of the Securities Exchange Act.[6] Consequently, the defendants' motion to amend their answer to assert claims for contribution is denied.

---

**4.** Today's result is entirely consistent with the court's earlier decision in *Levy v. First National City Bank*. In that case, the third party plaintiff's claims for indemnity under federal and state law were dismissed on the authority of *Globus, Inc. v. Law Services, Inc.*, 418 F.2d 1276 (2d Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). The court dismissed the third-party plaintiff's claims for indemnity under the federal securities laws, after having concluded in *In re New York City Municipal Securities Litigation, supra*, that the New York Urban Development Corporation could not be a joint tortfeasor under the terms of the federal securities laws.

The court did not decide in *Levy*, and does not resolve today, the question of whether the defendants could seek contribution from the City on the plaintiffs' *common law* fraud claims. The court lacks jurisdiction to adjudicate that claim for contribution because it is asserted against a pendent party. *See Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1975); *In re New York City Municipal Securities Litigation*, (S.D.N.Y.1980).

**5.** Contribution provisions are found in § 11 of the 1933 Act, 15 U.S.C. § 77k, and in § 9 and § 18 of the 1934 Act, 15 U.S.C. §§ 78i, 78r.

**6.** The defendants' access to full appellate review is not restricted by today's decision. Upon the entry of a final judgment fixing the defendants' liability, if any, under the federal securities laws, the Court of Appeals for the Second Circuit can review this decision denying defendants leave to assert crossclaims or third-party claims for indemnity and/or contribution against the City. In any event, prior to a determination as to defendants' liability to plaintiffs, appellate review of the defendants' contingent claims for indemnity and/or contribution would be premature. *See Brunswick Corp. v. Sheridan*, 582 F.2d 175 (2d Cir. 1978). *See also Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).

### C. Motion of Defendants to Decertify the Friedlander and Spector Classes.

Defendants move to decertify the class composed of the first non-dealer purchasers of City notes originally certified, pursuant to Fed.R.Civ.P. 23(b)(3), in *Friedlander v. City of New York*, 71 F.R.D. 546 (S.D.N.Y. 1976), and the class composed of all persons who purchased New York City general obligation bonds between May 1, 1974 and September 30, 1975 originally certified, pursuant to Fed.R.Civ.P. 23(b)(3), in *Spector v. City of New York*, 71 F.R.D. 550 (S.D.N.Y. 1976).[7] The defendants argue that the classes should be decertified, pursuant to Fed.R.Civ.P. 23(c)(1), because the named plaintiffs are inadequate class representatives and their claims are atypical of those of the class. Fed.R.Civ.P. 23(a)(4), (a)(3). For the reasons stated below, the defendants' motion to decertify the *Friedlander* and *Spector* classes are denied.

 I conclude that the challenge to the adequacy of the named plaintiffs as class representatives is both factually and legally deficient.[8] Defendants argue that the named plaintiffs have left the prosecution of this lawsuit to the "unfettered discretion" of their attorney. *In re Goldship Funding Co.*, 61 F.R.D. 592 (M.D.Pa.1974). Specifically, it is alleged that the named plaintiffs have had few face-to-face contacts with their attorney, an insufficient understanding of the nature of the complaint, and a negligible role in key decisions affecting the conduct of the litigation. The deposition testimony of the named plaintiffs reveals that, in fact, the class representatives have had frequent conversations with their attorneys, Horowitz Deposition at 18–19, 82, 91; Friedlander Deposition at 6, 58; Zwynenburg Deposition at 45–46, 49–50; Truncell Deposition at 106–19, 185–92; Farrell Affidavit ¶¶ 13–14, have a basic understanding of the nature of their claims, Horowitz Deposition at 92–93; Friedlander Deposition at 52, 56–57; Zwynenburg Deposition at 58, 65–66; Truncell Deposition at 102–5, 157, 160, 164–65, and have consulted with their attorneys throughout the litigation, Friedlander Affidavit ¶¶ 4, 5, 7; Horowitz Deposition at 78–82; Zwynenburg Deposition at 45–46, 49–50; Truncell Deposition at 179–81, 185–86; Farrell Affidavit ¶¶ 11, 12. In addition, each of the named plaintiffs has been deposed extensively. It is evident therefrom and from the affidavits submitted in connection with this motion that Friedlander, Zwynenburg, Horowitz and Truncell are sufficiently aware of the importance of their role as class representatives and fully intend to have their claims vigorously prosecuted. *Cf. Greenspan v. Brassler*, 78 F.R.D. 130, 133 (S.D.N.Y.1978) (". . . an alarming unfamiliarity with the suit."); *Rogosin v. Steadman*, 65 F.R.D. 365 (S.D.N.Y.1974) (plaintiff "knew nothing at all of her action until four years later" and no "person, party, attorney, adviser, or otherwise has responsibly investigated the allegations . . ."). While the named plaintiffs may not be able to fully recite the sophisticated legal theories set forth in the complaint, Rule 23 of the Federal Rules of Civil Procedure does not require a named plaintiff to possess legal and financial acumen in order to act as a class representative in complex securities litigation. *See, e. g., Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807 (1966); *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480, 485–86 (E.D.Pa.1977); *Wellman v. Dickinson*, 79 F.R.D. 341 (S.D.N.Y.1978); *Dorfman v. First Boston Corp.*, 62 F.R.D. 466 (E.D.Pa. 1974); *Fischer v. International Telephone and Telegraph Corp.*, 72 F.R.D. 170 (E.D.N.Y.1976).

7. Consistent with today's decision granting the plaintiffs' motion to redefine the *Spector* class, the *Spector* and *Friedlander* classes are composed of original issue purchasers of the securities in question.

8. The original class representative for the bond class was Michael Spector. Mr. Spector now seeks to withdraw as class representative because he did not authorize the suit against the underwriter defendants. Consequently, for purposes of determining the adequacy of the class representative, the court will focus on James Truncell, the remaining class representative.

Once the class representatives have engaged competent counsel and acknowledged their willingness to pay the costs of class notice, their primary role is to insure the vigorous prosecution of the claims of the class members.[9] *See generally,* 7 Wright & Miller *Federal Practice and Procedure,* § 1766 n. 74. I am satisfied that the named plaintiffs in *Friedlander v. City of New York* will adequately perform that function.

The defendants also contend that the named plaintiffs in *Friedlander* are inadequate class representatives because their claims are atypical of those of the class. *See* Fed.R.Civ.P. 23(a)(3). According to the defendants, the claims of the named plaintiffs in *Friedlander* are susceptible to defenses arising out of the particular circumstances surrounding their purchase of the City's notes. Briefly stated, the defendants contend that in making their investment decisions, the named plaintiffs relied on the advice and/or representations of certain non-defendants. Such reliance would, in the defendants' view, make these plaintiffs susceptible to the defense that the alleged nondisclosures were not "material" to their investment decision, and make their claims atypical of those of the class they purport to represent.

■ Four years ago, the defendants unsuccessfully opposed class certification in *Friedlander* on the ground that individual questions predominated because the representations made to the public by the brokers and dealers differed among the proposed class members. The court's observations at that time are equally appropriate today. In a nondisclosure case

the varying amounts and kinds of knowledge that may have been possessed by

different class members, whether misrepresentations by broker/dealers or information gleaned from the press, does not preclude class treatment where what is alleged is a complete failure to disclose critical facts. *Esplin v. Hirschi,* 402 F.2d 94, 100 (10th Cir. 1968) *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Seiffer v. Topsy's Int'l Inc.,* 64 F.R.D. 714, 719 (D.Kan.1974).

*Friedlander v. City of New York, supra,* at 549.

■ The Supreme Court has held that, in a nondisclosure case, "positive proof of reliance is not [necessary]." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Rather, reliance will be presumed once the plaintiffs have demonstrated at trial the materiality of the alleged nondisclosure, *i. e.* "whether a reasonable man would attach importance to the alleged omissions in determining his course of action." *Titan Group, Inc. v. Faggen,* 513 F.2d 234 (2d Cir.), *cert. denied,* 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975). *See Blackie v. Barrack,* 524 F.2d 891, 905–8 (9th Cir. 1975). In *Titan Group, Inc. v. Faggen, supra,* the court explained that

[i]n cases involving non-disclosure of material facts, even when coupled with access to the information, materiality rather than reliance thus becomes the decisive element of causation. *See, e. g., Metro-Goldwyn-Mayer, Inc. v. Ross,* 509 F.2d 930 (2d Cir. 1975), *Stier v. Smith,* 473 F.2d 1205 (5th Cir. 1973). And determination of materiality allows logically an inference of reliance. *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341 (2d Cir.), *cert. denied,* 414 U.S. 910, 94

---

9. With respect to the *Friedlander* case, the deposition testimony of Mrs. Friedlander clearly indicates a willingness on her part to pay the costs of class notice up to a certain dollar amount. Friedlander Deposition at 59–64. Defendants unsuccessfully attempted to discover the outer limits of her financial commitment to this litigation. A similar problem arose in the *Spector* case. Although Mr. Truncell, a practicing attorney, had an awareness of his obligation to pay certain costs of this litigation, he did not fully understand the extent of his poten-

tial financial liability. Truncell Deposition at 87–92; Farrell Affidavit ‘ 8. Whether Mrs. Friedlander or Mr. Truncell would have been willing to assume the financial burdens of class notice to the note and bond classes is a matter of speculation. Given the fact that the costs of class notice in the *Friedlander* and *Spector* cases are to be paid out of the proposed settlement funds, the precise nature of the class representative's financial commitment is no longer relevant.

S.Ct. 231, 38 L.Ed.2d 148 (1973). *See, generally,* Note, 88 Harvard L.Rev. 584 (1975).

*Id.* at 239. This "inference of reliance" can be rebutted upon a showing that the alleged nondisclosures were not material to the named plaintiffs' investment decision. *See Titan Group, Inc. v. Faggen, supra; Greenspan v. Brassler, supra; Panzirer v. Wolff,* CCH Fed.Sec.L.Rep. ¶ 97,251 (S.D.N.Y. 1980).

■ Under the circumstances of this case, the defendants have not demonstrated that their alleged nondisclosures were not material to the named plaintiffs. In a case involving an alleged fraud on the market, the mere fact that the plaintiffs may have conversed with others before purchasing the City's securities does not undermine the materiality of the alleged nondisclosure. Accordingly, the defendants' challenge to the adequacy of the class representative must fail.

■ In *Spector v. City of New York,* the defendants challenge the adequacy of James Truncell as a class representative because he is allegedly not a member of the redefined class, i. e., an original issue purchaser. It is undisputed that Mr. Truncell purchased approximately $300,000 of the New York City general obligation bonds issued on March 1, 1974 from the Bankers Trust Company on May 1, 1974. The defendants contend that these purchases were made in the after-market, and not in the primary market. In support of this view, defendants submit the affidavit of Mr. Douglas S. Lasher, a Vice President of the Chase Manhattan Bank, N.A., the managing underwriter of the March 1, 1974 bond issue. Mr. Lasher reports that "the primary syndicate was closed and that all the securities had been taken down or sold by April 12, 1974." Lasher Affidavit ¶ 2. This view is directly contradicted by an affidavit submitted by Mr. Thomas R. Farrell, an attorney for the bond class. Farrell Affidavit ¶ 17.

While it is clear that Mr. Truncell cannot adequately represent a class of which he is not a member, there is a substantial factual dispute as to his membership in the redefined class. The court cannot resolve this dispute without testimony from an appropriate official or officials of the Bankers Trust Company, who can give testimony tracing to their source the securities sold by the bank to Mr. Truncell. Accordingly, a hearing will be held during the morning of June 13, 1980 commencing at 10:00 A.M. to take such testimony. The court will at this time reserve decision as to the adequacy of Mr. Truncell as class representative. In order to protect the rights of the members of the *Spector* class, the class plaintiffs are directed to proceed with class notice and, pursuant to Fed.R.Civ.P. 23(d)(2), are to include in such notice a statement soliciting the intervention of other class members as class representatives.

D. *Motions of Class Plaintiffs to Amend the Complaint to Narrow the Bond Class.*

Plaintiffs move to redefine the bond class in *Spector v. City of New York* and *Truncell v. Bank of America N. T. & S. A.* to include only the non-dealers who purchased New York City General Obligation Bonds upon their original issue after May 1, 1974 and prior to September 30, 1975. This would eliminate from the *Spector* class all aftermarket purchasers of the bonds in question; the redefined *Spector* class would be composed of all original issue purchasers of these securities.[10]

■ Prior to a decision on the merits, leave to amend the complaint to redefine the class should be freely given except when some prejudice results to either the defendants or to those persons dropped from the class. Fed.R.Civ.P. 15(a) and 23(d). *See Ross v. Warner,* 80 F.R.D. 88 (S.D.N.Y.1978); *In re U. S. Financial Secu-*

---

10. The defendants can hardly complain about the plaintiffs' realization that the *Spector* class was unmanageable, because the defendants originally objected to class certification on these grounds. *See Spector v. New York, supra.* Nonetheless, the redefined class is certainly of manageable size.

*rities Litigation,* 69 F.R.D. 24 (S.D.Cal. 1975); *Berse v. Berman,* 60 F.R.D. 414 (S.D. N.Y.1971). Factors bearing on the manageability of the class, including problems related to the identity of the members and class notice, may justify a modification of the class. *See, Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170, n. 16, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732; *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D.Pa.1968). It is undisputed that certain efficiencies in class notice and proof at trial would result from the proposed narrow definition of the class. In addition, the defendants do not claim to be prejudiced by the granting of this motion.

The likelihood of prejudice to those persons who are dropped from the class "can only be determined by examining carefully the circumstances of each case." *Berse v. Berman,* 60 F.R.D. 414, 417 (S.D.N.Y.1973). From the early days of the City's financial crisis, the popular and financial press has carried stories concerning the progress of this litigation. Redefining the *Spector* class almost four years after the certification of this class action presents the risk that some persons who are to be dropped from the class will not be notified of that fact. Moreover, by the time persons who mistakenly rely on their membership in the class become aware of their error, the statute of limitations may bar them from asserting a claim. *See generally,* Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 40 (1968). While the court does not believe that individual notices to those persons to be dropped from the class is required, something more than the issuance of this memorandum and order is warranted. *Cf. Ross v. Warner,* 80 F.R.D. 88 (S.D.N.Y.1978); *Rothman v. Gould,* 52 F.R.D. 494 (S.D.N.Y. 1971). Consistent with the court's obligation under Rule 23(d)(2) of the Federal Rules of Civil Procedure to direct notice "for the protection of the members of the class or otherwise for the fair conduct of the action," the plaintiffs will be required to provide notice to members of the class whose interests are adversely affected by today's decision. Therefore, plaintiffs are to submit a proposed advertisement which is to be placed in the *New York Times* and the *Wall Street Journal* on two consecutive days apprising the public of the nature of the redefined *Spector* class.

Accordingly, the motion of the class plaintiffs to redefine the *Spector* class is granted on the conditions set forth herein.

### E. *Motion of Class Plaintiffs to Amend Their Complaint To Drop Certain Peripheral Defendants.*

Finally, with respect to the motion of the class plaintiffs to amend the complaints in all of the actions to drop as defendants Weeden & Co., Inc., A. G. Becker & Co., Inc., Bear Stearns & Co., Inc., Ehrlich–Bober & Co., Inc. and First Pennco Securities Inc., the motion is granted. In litigation of this size and complexity, it is not uncommon for plaintiffs to uncover, through the discovery process, weaknesses in their own case or in their litigation strategy. Plaintiffs, having taken extensive discovery, as much as concede that they do not have a case against these defendants. *See* Meyer Affidavit at 3. Insofar as such revelations lead to a motion to drop certain defendants,[11] the relief should be granted in the interests of justice.

*Conclusion*

Plaintiffs in *Spector v. City of New York* are to submit to the court within 15 days of the date of this order (1) a proposed form of public notice to those who would hereafter not be included in the class, as required in Part D above, and (2) the proposed supplement to the class notice presently in preparation soliciting additional class representatives.

The foregoing is so ordered.

---

11. The class notice to be sent to the members of the *Friedlander* and *Spector* classes will apprise them of the fact that these defendants have been dropped from this litigation, and will give the class members an opportunity to object to that decision.